**In re UNION PACIFIC RAILROAD COMPANY, Relator.**

No. 08–0740.

Supreme Court of Texas.

Sept. 25, 2009.

Lynne Liberato, Kent Rutter, Haynes and Boone, LLP, Deborah A. Newman, Newman, Flavaloro & Troegel, Houston, for relator.

Robert M. Tramuto, Jones, Granger, Tramuto, Christy & Halstead, Dana G. Kirk, Kirk Law Firm, Houston, George LeGrand, Arthur Stanley Bernstein, LeGrand & Bernstein, San Antonio, Darrin M. Walker, Law Office of Darrin Walker, Kingwood, for real parties in interest.

## PER CURIAM.

In this case, we consider whether a trial court abused its discretion when it compelled a rail transportation company to produce confidential "rate structures," which include formulas to determine shipping rates charged to customers. We hold that it did, as the defendant met its burden of establishing that the information sought is protected by the trade secret privilege and the plaintiff failed to demonstrate how the information is "necessary or essential to the fair adjudication of the case." *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732 (Tex.2003). We, therefore, conditionally grant the writ of mandamus.

A Union Pacific Railroad Company train collided with another train in Bexar County in 2004, after the Union Pacific train failed to stop at a signal. The Union Pacific train derailed, a fire resulted, and a loaded tank car (the 16th of 74 cars) was breached, resulting in the release of toxic chlorine gas. Union Pacific was transporting the gas for Occidental Chemical Corporation (OxiChem).

A number of nearby residents, including Kathleen Constanzo, claim to have been injured due to inhalation of the gas. Constanzo sued Union Pacific, alleging negligence and gross negligence.[1] She alleged that Union Pacific's train failed to stop at the signal, a fact Union Pacific does not dispute. She also claims that Union Pacific should have positioned the chlorine car farther toward the rear of the train and that hazardous material should not have been placed next to steel cars.

During discovery, Constanzo deposed Timothy O'Brien, Union Pacific's Manager of Chemical Transportation Safety. Part of the deposition focused on positioning of the cars. Constanzo claims O'Brien testified that Union Pacific had no obligation to treat hazardous materials differently than other materials, and that Union Pacific could place a hazardous materials car anywhere in the train, except not within five

1. In its petition for writ of mandamus, Union Pacific also listed, as real parties in interest: Karen Mueller, as parent and next friend of Christian Mueller; Johnny Pavelka and Debra Pavelka, as parents and next friends of Brooke Pavelka, Collin Pavelka, and Kossiopia Pavelka. Union Pacific has since informed the Court that it settled with these parties, leaving Constanzo as the only remaining real party in interest.

cars of the engine. As a result of this deposition, Constanzo sought Union Pacific's hazardous material rate structures— the rates Union Pacific charges for rail shipping and the methods used in computing those rates. Constanzo originally sought to depose the "corporate representative with most knowledge concerning shipping rates for hazmat interstate and how those rates are calculated and arrived at." Union Pacific filed a motion to quash the notice and sought a protective order preventing compliance. After a hearing, the trial court denied both of Union Pacific's motions, but limited disclosure of the deposition testimony and related documents to the attorneys of record and their employees. After Union Pacific expressed an intent to seek mandamus relief, Constanzo sought to narrow the scope of the request to only OxiChem rate structures for chlorine chemicals, as compared to non-hazardous materials, for the period from June 2003 to June 2005. Constanzo also proposed a protective order, similar to the one already issued by the trial court, to protect the confidentiality of the material. Several days later, before Union Pacific responded, Constanzo propounded a new deposition notice (the one now at issue), requesting:

CORPORATE REPRESENTATIVE WITH MOST KNOWLEDGE CONCERNING SHIPPING RATES FOR INTERSTATE HAZMAT BASED ON THE FOLLOWING PARAMETERS:

1. The Rate structure for Occidental Chemical Corporation for the handling of hazmat materials for the time period of June 2003 through June 2005.

2. The Rate structure for the handling of chlorine chemicals compared to the rate structure for non hazmat material that is hauled for Occidental Chemical Corporation for the time period of June 2003 through June 2005.

Union Pacific again sought to quash the notice, and sought a protective order. The trial court again denied Union Pacific's motions, and ordered the information disclosed only to the attorneys and necessary employees.[2]

■ Union Pacific filed a mandamus petition with the Fourth Court of Appeals, which denied it. 295 S.W.3d 1 (Tex.App.-San Antonio 2008). Union Pacific now seeks mandamus relief in this Court, arguing that the information is protected by the trade secret privilege, that the information is protected by contractual confidentiality provisions and federal law, and that the request is overly broad and unduly burdensome. We need not reach Union Pacific's second and third arguments, as we agree that the information is protected by the trade secret privilege.

■ "[W]hen trade secret privilege is asserted as the basis for resisting production, the trial court must determine [ (1) ] whether the requested production constitutes a trade secret; [ (2) ] if so, the court must require the party seeking production to show reasonable necessity for the requested materials." *In re Bass*, 113 S.W.3d 735, 738 (Tex.2003). If the information is a trade secret and the requesting parties do not need it, an order that re-

2. When Union Pacific filed its petition for writ of mandamus, underlying proceedings were pending in the 73rd Judicial District Court and the 288th Judicial District Court in Bexar County. Honorable Karen H. Pozza, presiding judge of the 407th Judicial District Court in Bexar County, signed the pretrial order at issue in this mandamus proceeding. When courts use central docketing, as in Bexar County, we generally treat the judge who signed the order as the respondent. *In re Schmitz*, 285 S.W.3d 451, 454 (Tex.2009).

quires disclosure is a clear abuse of discretion. *Id.* at 745.

■ To determine whether a trade secret exists, we weigh the six factors set forth in the Restatement of Torts in the context of the surrounding circumstances: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Bass*, 113 S.W.3d at 739 (citing RESTATEMENT OF TORTS § 757 cmt. b. (1939); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 reporter's note cmt. d. (1995)). Union Pacific provided affidavits by Robert G. Worrell, Senior Assistant Vice President for Chemicals, and Louise A. Rinn, Associate General Counsel, addressing each of the Restatement elements, explaining why this rate information is valuable within the trade. Worrell explained:

> The manner and method that Union Pacific employs to calculate and arrive at shipping rates ... is confidential, proprietary and a trade secret of Union Pacific. The information is not generally known or readily available to Union Pacific's competitors or its customers or other businesses. The information is not even generally known throughout the company. Rather, the information is known only to a limited number of Union Pacific employees and certain management employees.

Worrell also discussed the harm to Union Pacific should the information be found by competitors, as it would provide them a pricing advantage. Worrell even explained that Congress recognized the importance of the rates, prohibiting their disclosure in certain instances. *See, e.g.,* 49 U.S.C. § 11904 (prohibiting railroads from disclosing "information about the contents of a contract authorized under [49 U.S.C.] section 10709 ... that may be used to the detriment of the shipper or consignee or may disclose improperly, to a competitor, the business transactions of the shipper or consignee"). Rinn reiterated these points, also explaining the time, expense, and manpower expended on setting the rates, which makes it "extremely difficult to replicate this information." Although Constanzo never concedes the point, she does not dispute whether the rate structures are trade secrets. Union Pacific's affidavits establish trade secret protection under the Restatement factors, and Constanzo presents no evidence to the contrary.

■ Once trade secret status has been established, the burden shifts to Constanzo to establish that the information is "necessary or essential to the fair adjudication of the case, weighing the requesting party's need for the information against the potential of harm to the resisting party from disclosure." *Bridgestone/Firestone*, 106 S.W.3d at 732. We have not "state[d] conclusively what would or would not be considered necessary for a fair adjudication, indicating instead that the application of the test would depend on the circumstances presented." *Id.* "[T]he degree to which information is necessary in a case depends on the nature of the information and the context of the case." *Id.* But, "the test cannot be satisfied merely by general assertions of unfairness;" instead, "a party ... must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *Id.* at 732–33; *see also Bass*, 113

S.W.3d at 743 ("Necessity depends on whether the trade secret's production is 'material and necessary to the litigation.'" (quoting *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 615 (Tex.1998))).

Constanzo claims the rate information is necessary to "rebut Union Pacific's claim that placing hazmat cars in the back of the train would be cost-prohibitive." Union Pacific admitted, however, that it is financially capable of bearing the costs of repositioning the railcars. In addition, Constanzo argues she needs to highlight that "Union Pacific recognized a higher duty in its pricing but ignored that duty in practice," and needs the rate structures to demonstrate that discrepancy. She states that Union Pacific admitted it charges higher rates for shipping hazardous materials than for shipping non-hazardous materials, which Union Pacific suggests relates to additional shipping costs. Even if we assume that Constanzo needs to make this argument, we do not see why Constanzo "needs" the actual rate structures to advance the argument. Constanzo claims she has no alternative means of proving that Union Pacific recognized, yet disregarded, a higher duty with respect to hazardous materials. It is unclear to us, and Constanzo has not explained, why she needs the *specific* rate structures to advance this negligence theory. The trial court transcript indicates that Constanzo is seeking the rate structures for purposes of establishing damages, but Constanzo does not make that argument before this Court. Nevertheless, we note that we would have difficulty concluding that evidence of damages, even punitive damages, could not be found anywhere but through trade secrets. Constanzo has not met her burden of pointing to the specific reason the information is needed. *See Bridgestone/Firestone*, 106 S.W.3d at 733.

The potential harm to Union Pacific due to possible disclosure is also problematic.

Constanzo first points to the protective order. The trial court did enter an order restricting those who could view the rate structures, but that alone does not ensure that an order will not violate the trade secret privilege. *See id.* at 731–32 (granting mandamus relief where trial court ordered relator to disclose trade secrets only to three attorneys and an expert witness and only on paper that could not be photocopied). Constanzo claims the order is narrow, but we disagree. The order requires Union Pacific to release rate structures related to all hazardous materials shipped for OxiChem from June 2003 through June 2005. It also requires the release of all OxiChem rate structures for chlorine chemicals for the same time period. Worrell explained the potential harm associated with this disclosure: "Disclosure of the information would irreparably harm Union Pacific because it would provide competitors with an advantage in predicting Union Pacific pricing and undercutting Union Pacific efforts to market and conduct its business with its customers in a competitive fashion."

Constanzo failed to meet her burden of establishing that the rate structures are "material and necessary" to the case. *Bass,* 113 S.W.3d at 743. "[N]o adequate appellate remedy exists if a trial court orders a party to produce privileged trade secrets absent a showing of necessity." *Id.* at 745. Accordingly, without hearing oral argument, TEX. R. APP. P. 52.8(c), we conditionally grant Union Pacific's petition for writ of mandamus and direct the trial court to vacate its May 9, 2008 order compelling production of rate structures and issue further orders consistent with this opinion. We are confident the trial court will comply. The writ will issue only if it fails to do so.