Petition
for Writ of Mandamus Conditionally Granted and Substitute Opinion filed May 27,
2010.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00906-CV



In Re Cooper tire & rubber company,
Relator



 



ORIGINAL
PROCEEDING



WRIT OF MANDAMUS



SUBSTITUTE OPINION


The Real Parties in Interest’s motion for rehearing
en banc is denied, our opinion of February 2, 2010 is withdrawn, and the
following substitute opinion is issued in its place.[1]  

On October 26, 2009, relator, Cooper Tire &
Rubber Company, filed a petition for writ of mandamus in this Court.  See Tex.
Gov’t Code Ann. §22.221 (Vernon 2004); see also Tex. R. App. P. 52.  In
the petition, Cooper Tire asks this Court to compel the Honorable R.K. Sandill,
presiding judge of the 127th District Court of Harris County, to set aside his
October 12, 2009 order compelling relator to produce documents reviewed in
camera because they contain confidential trade secret information and,
alternatively, are not relevant.  We conditionally grant the petition.  

Background

            On
October 27, 2007, the plaintiffs were involved in a head-on collision with
Dustin Langstaff.  The plaintiffs allege that the tread separated from the
right rear tire on Langstaff’s vehicle, causing him to lose control and collide
with the vehicle driven by one of the plaintiffs, Maria Del Rocio Rodriguez,
and occupied by the other plaintiffs.  The plaintiffs sued Cooper Tire, the
manufacturer of the tire at issue, the Weather-Master S/T, for strict
liability, design defect, manufacturing defect, marketing defect, and
negligence.  The plaintiffs allege that Cooper Tire failed to incorporate a
design element known as belt edge gumstrips (“BEGs”) into the design for the
Weather-Master S/T, and that the incorporation of this design element would
have resulted in a safer alternative design.  

            The
plaintiffs seek documents regarding a different tire that show when BEGs were
added and removed from that tire.  The tire involved in the accident was made
from Green Tire Spec 3004, while the documents the plaintiffs seek are for the
tire made from Green Tire Spec 2257.  The Green Tire Spec (“GTS”) is
essentially the tire design or fundamental blueprint according to which the
given tire is manufactured and reflects the various manufacturing and design changes
to a GTS.  

            In
response to the plaintiffs’ requests for production, Cooper objected on the
basis of relevance.  The plaintiffs moved to compel production.  In response to
the plaintiffs’ motion to compel, Cooper Tire argued that the requested documents
contain trade secrets and they are not relevant because they concern
information on a tire other than the tire involved in the accident.  

            The
plaintiffs contend that the documents for GTS 2257 are relevant because they
show when BEGs were added and removed and the circumstances surrounding tire
failures both with and without BEGs.  Specifically, the plaintiffs argue that
this information is necessary to establish that Cooper Tire had actual
knowledge of the defect in its tire design and that BEGs would cure the defect,
but continued to produce defective tires with conscious disregard for the
rights and safety of people like the plaintiffs.  

            On
August 18, 2009, the trial court ordered Cooper Tire to produce in camera
documents responsive to the plaintiffs’ motion to compel regarding GTS 2257. 
On October 5, 2009, the trial court conducted the in camera review and, on
October 12, 2009, the trial court signed the following order:

            To prevail on their design defect claim at
trial, Plaintiffs have the burden of proving Defendant could have provided a
safer alternative.  Documents which show that Cooper Tire knew of possible
design changes that could have made the tire at issue less likely to fail are
relevant and a proper subject for discovery.  Any danger of disseminating this
information is remedied by the Protective Order that is in place.

            IT IS THEREFORE ORDERED that Defendant Cooper
Tire shall produce the documents reviewed in camera on October 5 2009, to
Plaintiffs within 5 business days of this order. 

            The
trial court determined the documents are relevant, but did not address whether
the documents contain trade secret information.  

Mandamus Standard of Review

            To
be entitled to the extraordinary relief of a writ of mandamus, the party
resisting discovery bears the heavy burden of establishing an abuse of
discretion and an inadequate remedy by appeal.  In re CSX Corp., 124
S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam).  A trial court
abuses its discretion if it reaches a decision so arbitrary and unreasonable as
to constitute a clear and prejudicial error of law, or if it clearly fails to
correctly analyze or apply the law.  In re Cerberus Capital Mgmt., L.P.,
164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); Walker v.
Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  In reviewing
whether appeal is an adequate remedy, we consider whether the benefits of
mandamus review outweigh the detriments.  In re BP Prods. N. Am., Inc.,
244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).  

Analysis

Trade
Secret Privilege

            “A
trade secret is any formula, pattern, device or compilation of information
which is used in one’s business and presents an opportunity to obtain an
advantage over competitors who do not know or use it.”  Computer Assocs.
Int’l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996).  Rule 507 of
the Texas Rules of Evidence provides for the protection of trade secrets:

            A person has a privilege, which may be claimed
by the person or the person’s agent or employee, to refuse to disclose and to
prevent other persons from disclosing a trade secret owned by the person, if
the allowance of the privilege will not tend to conceal fraud or otherwise work
injustice.  When disclosure is directed, the judge shall take such protective
measure as the interests of the holder of the privilege and of the parties and
the furtherance of justice may require.

Tex.
R. Evid. 507.  

            The
trade secret privilege seeks to accommodate two competing interests.  In re
Continental Gen. Tire., Inc., 979 S.W.2d 609, 612 (Tex. 1998) (orig.
proceeding).  First, it recognizes that trade secrets are an important property
interest, worthy of protection.  Id.  Second, it recognizes the
importance placed on fair adjudication of lawsuits.  Id.  Rule 507
accommodates both interests by requiring a party to disclose a trade secret
only if necessary to prevent “fraud” or “injustice.”  Id.  Disclosure is
required only if necessary for a fair adjudication of the requesting party’s
claims or defenses.  Id.  

            The
party asserting the trade secret privilege has the burden of proving that the
discovery information sought qualifies as a trade secret.  In re Bass,
113 S.W.3d 735, 737 (Tex. 2003) (orig. proceeding).  If the resisting party
meets its burden, the burden shifts to the party seeking the trade secret
discovery to establish that the information is necessary for a fair
adjudication of its claim.  Id.  It is an abuse of discretion for the
trial court to order production once trade secret status is proven if the party
seeking production has not shown necessity for the requested materials.  Id.
at 738.  

            To
determine whether a trade secret exists, the following six factors are weighed
in the context of the surrounding circumstances:  (1) the extent to which the
information is known outside of the business; (2) the extent to which it is
known by employees and others involved in the business; (3) the extent of
measures taken to guard the secrecy of the information; (4) the value of the
information to the business and to its competitors; (5) the amount of effort or
money expended in developing the information; and (6) the ease or difficulty
with which the information could be properly acquired or duplicated by others. 
In re Union Pac. R.R. Co., 294 S.W.3d 589, 592 (Tex. 2009) (orig.
proceeding) (per curiam).  The party claiming a trade secret is not required to
satisfy all six factors because trade secrets do not fit neatly into each
factor every time.  In re Bass, 113 S.W.3d at 740.  

            The
Texas Supreme Court has not stated conclusively what would or would not be
considered necessary for a fair adjudication; instead, the application depends
on the circumstances presented.  In re Bridgestone/Firestone, Inc., 106
S.W.3d 730, 732 (Tex. 2003) (orig. proceeding).  The degree to which
information is necessary depends on the nature of the information and the
context of the case.  Id.  However, “we can say with certainty that the
test cannot be satisfied merely by general assertions of unfairness.”  Id. 
“Just as a party who claims the trade secret privilege cannot do so generally
but must provide detailed information in support of the claim, so a party
seeking such information cannot merely assert unfairness but must demonstrate
with specificity exactly how the lack of the information will impair the
presentation of the case on the merits to the point that an unjust result is a
real, rather than a merely possible, threat.”  Id. at 732–33.  An
appellate remedy does not exist if a trial court orders a party to produce
privileged trade secrets absent a showing of necessity.  In re Bass, 113
S.W.3d at 745.  

Application
of Six Factors

            In
support of its claim of trade secret privilege, Cooper Tires submitted three
affidavits of Anthony E. Brinkman, Cooper Tire’s Principal Tire Analysis
Engineer, dated August 5, 2008, February 20, 2009, and August 7, 2009.  After
reviewing Brinkman’s three affidavits together and applying the six factors, we
conclude that Cooper Tire has established that the subject documents contain trade
secrets.

Factors
One, Two and Three

            The
first three factors are the extent to which the information is known outside Cooper
Tire’s business; the extent to which the information is known by employees and
others involved in Cooper Tire’s business; and the extent of measures taken by
Cooper Tire to guard the secrecy of the information.  Brinkman testified that
Cooper Tire keeps the information contained in the GTS History of GTS 2257, Product
Change Notifications (“PCNs”) related to the addition and removal of BEGs in
GTS 2257, the Experimental Mold Design for GTS 2257, and Adjustment Follow-Up
Reports for GTS 2257 secret, and this information is not generally known or
ascertainable by its competitors.  Cooper Tire’s policies with respect to
handling trade secret information are given to all salaried employees when they
are hired.  All salaried employees must sign a nondisclosure agreement stating
they understand that Cooper Tire’s internal information and documentation such
as research, drawings, formulae, methods, processes, know-how, and facilities
are trade secrets and this information will be treated as such.  Cooper Tire’s
policy statement on business ethics and standards of conduct emphasizes the
importance of appropriately safeguarding the company’s trade secrets, including
without limitation, planned new products, the ways Cooper Tire manufactures its
products, and test data.  Cooper Tire’s policy on disclosures and use of
corporate information forbids all employees from disclosing trade secret
information without proper authorization from an officer of Cooper Tire.  

            Access
is limited and tight controls are maintained for any vendors, business
partners, contractors, and all other individuals who are not employed by Cooper
Tire, but require entry onto Cooper Tire property for a compelling business
necessity.  Cooper Tire’s Technical Center in Findlay, Ohio is locked and 
accessible only through special, computerized coded access cards and/or coded
keypad access 24 hours a day.  A similar system is employed at Cooper Tire’s
corporate headquarters in Findlay, Ohio.  Access to Cooper Tire’s manufacturing
plant is through 24-hour guarded entrances.  

            Cooper
Tire may share its trade secret information with its employees or agents
without endangering the trade secret’s protection.  See In re Bass, 113
S.W.3d at 742.  Brinkman details Cooper Tire’s efforts maintain the secrecy of
its information.  See Phillips v. Frey, 20 F.3d 623, 631 (5th Cir. 1994)
(explaining party that fails to take reasonable precautions to secure its
secrecy cannot properly claim that information constitutes trade secret).  Therefore,
Cooper Tire has established that it maintains procedures to keep the
information secret.[2] 
Accordingly, we conclude that factors one, two, and three weigh in favor of
finding that the documents contain trade secret information.

Factor
Four

            The
fourth factor is the information’s value to Cooper Tire and its competitors.  In
his affidavits, Brinkman explained the importance of the type of information in
the GTS 2257 documents.  Brinkman explained that the GTS History summarizes
revisions that have been made to a GTS throughout the history of the GTS, and
such documents reflect various manufacturing and design changes and can include
rubber compound formula information.  

            Product
Change Notifications (“PCNs”) are issued to notify personnel of an impending
authorized product change, and these documents include a description of the
change, the reason for the change, the data supporting the change, the products
affected by the change, a proposed implementation schedule, and the plants
affected by the change.  PCN documents may also contain analysis and data
regarding the material production, and processing requirements necessary to
implement the change and rubber compound formula information.  

            With
respect to the Experimental Mold Designs, in the manufacturing process, tire
builders assemble raw and uncured components into a “green” tire that is placed
in a curing mold.  The green tire is then subjected to heat and pressure to
achieve its final form.  

            Adjustment
Follow-Up Reports, which contain trade secret information, are issued at the
request of the engineer to determine the impact of a design or manufacturing
change to a particular tire design or GTS on the number of tires manufactured
to that GTS returned to Cooper Tire for a specific condition.  The reports
contain its adjustment or tire return information for the particular GTS and
specific condition being examined as well as the analysis and conclusions drawn
from that information.  They may also contain production information and
background information regarding the change being examined.  

            Brinkman
testified that the documents contain trade secret information developed at
great expense to Cooper Tire; such information would be extremely valuable to
its competitors; a competitor could use the information to copy Cooper Tire’s
products and sell them in the tire market in competition with Cooper Tire; and
such competitor could do so without compensating Cooper Tire for its design
expenses.  The availability of Cooper Tire’s specifications for tire building,
manufacturing, and design, and other documents to another tire manufacturer
would enable that manufacturer to gain a significant competitive advantage over
Cooper Tire because it would allow the competitor to evaluate the performance
of various tire components, without investing any time or expense.  

            Brinkman
further testified that conceptualizing, developing, testing, and implementing
new products and improving the durability or performance characteristics of
current products require a substantial commitment of time and personnel and an
enormous financial and technological investment.  Any advantage, whether it is
a gain in lead time for the introduction of new products or an understanding of
the competition’s weakness, thinking, goals, and strategy can lead to
significant gains. 

            With
adjustment data, a competitor could discern or infer certain qualities about
Cooper Tire’s products and thereby adjust its product or warranty practices to
the same quality level to better compete.  Adjustment data would permit a
competitor to learn Cooper Tire’s production schedule, including the numbers
and types of tires produced, from which the competitor could discern or infer
the demand for particular types of products, and such information could be used
to the competitor’s advantage.  Cooper Tire’s competitors do not publicize
their tire return and other adjustment data because of its competitive value.  

            Brinkman’s
affidavits sufficiently establish the value of the information contained in the
subject documents to Cooper Tire and its competitors.  Therefore, we conclude
that factor four weighs in favor of finding that the subject documents contain trade
secret information.

Factor
Five

            The
fifth factor is the amount of money expended by Cooper Tire in developing
information.  Cooper Tire admits that Brinkman does not place a dollar figure
on developing the requested information about the GTS 2257.  This factor weighs
against finding that the documents contain trade secret information.

 

Factor
Six

            Factor
six is the ease or difficulty with which the information could be properly
acquired or duplicated by others.  Brinkman testified that this information
could not be easily duplicated, and this information would facilitate easy
duplication of Cooper Tire’s product.  With regard to adjustment data reports,
the plaintiffs concede that a competitor generally cannot acquire or duplicate
data that would appear in such reports given that these reports are generated
by information gathered by Cooper Tire.  Brinkman testified that Cooper Tire’s
competitors do not publish their adjustment data.  We find that this factor
weighs in favor of finding that the documents contain trade secret information. 


            Cooper
Tire has established five of the six factors.  However, Cooper Tire is not
required to establish all six factors.  See In re Bass, 113 S.W.3d at
740.  Weighing the factors in the context of the surrounding circumstances, we
conclude that Cooper Tire has established that the documents contain trade
secrets.  See In re Union Pac. R.R. Co., 294 S.W.3d 589, 592).  Because
Cooper Tire met its burden to establish that the documents contain trade secret
information, the burden shifted to the plaintiffs to establish that the
information is necessary for a fair adjudication of their claims.  See Bass,
113 S.W.3d at 737.  

Necessary
for Fair Adjudication

            Cooper
Tire argues that the plaintiffs did not meet their burden to produce evidence
“demonstrat[ing] with specificity exactly how the lack of information will
impair the presentation of the case on the merits to the point that an unjust
result is real, rather than a merely possible, threat.”  In re
Bridgestone/Firestone, Inc., 106 S.W.3d at 733.  The plaintiffs argue that
there is sufficient evidence to support a determination that these documents
are necessary for the fair adjudication of their claims because the information
is essential to prove two elements of their claims.  First, the plaintiffs’
design defect claims require evidence that a safer alternative design was
available when the subject tire was manufactured, and evidence that the use of
BEGs on other Cooper Tires reduced the number of tire separation incidents
establishes this point.  Second, the plaintiffs’ claim for punitive damages
requires proof that Cooper Tire had actual subjective awareness of the risk
associated with producing defective tires that could be remedied by BEGs and,
nevertheless, proceeded to produce defective tires with conscious indifference
to the rights and safety of people like the plaintiffs.  

            Brinkman
stated that the use of BEGs is a method of providing the proper thickness of
rubber at the belt edges, and that the rubber on the subject tire was at the
proper thickness.  Based on these statements, the plaintiffs contend that
Cooper Tire intends to argue that the inclusion of the BEGs would not decrease
the number of tread separations in the subject tire.  Therefore, the plaintiffs
claim it would be unjust to allow Cooper Tire to assert that the inclusion of
the BEGs would not have been a safer alternative design while depriving the
plaintiffs of evidence that the inclusion of BEGs as part of a different Cooper
Tire designs decreased the number of tread separations.  

            Based
on the record before us, we conclude that the plaintiffs have not established that
the trade secret information is necessary to the fair adjudication of their
claim that the use of BEGs provides a safer alternative design.  In their
briefing to the trial court, the plaintiffs rely on documents already produced
to them that “discuss[] the use of BEGs to improve Cooper’s tires.”  Moreover,
the Texas Supreme Court recently rejected a similar argument regarding punitive
damages, explaining that “we would have difficulty concluding that evidence of
damages, even punitive damages, could not be anywhere but through trade
secrets.”  In re Union Pac. R.R. Co., 294 S.W.3d at 593.  We hold that the
plaintiffs have not met their burden to establish the information in the GTS
2257 documents is necessary to a fair adjudication of their claims.  Because
the plaintiffs have not established that the trade secret information is
necessary for a fair adjudication of their claims, the trial court abused its
discretion by compelling Cooper Tire to produce the GTS 2257 documents.  See
In re Bass, 113 S.W.3d at 737.  Moreover, Cooper Tire does not have an
adequate remedy by appeal.  See id. at 745 (holding appellate remedy does
not exist if trial court orders party to produce privileged trade secrets
absent showing of necessity). [3]
 

Conclusion

            We
hold the trial court abused its discretion by compelling Cooper Tire to produce
to the plaintiffs the documents submitted in camera.  Accordingly, we
conditionally grant the petition for writ of mandamus and direct the trial
court to set aside its October 12, 2009 order compelling Cooper Tire to produce
to the plaintiffs the subject documents.  The writ will issue only if the trial
court fails to act in accordance with this opinion.  We lift the stay issued on
October 26, 2009. 

 

 

                                                                        

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Anderson and Boyce.









[1] The Real
Parties in Interest are the plaintiffs below and they are: Maria Del Rocio
Rodriguez, individually and as next friend of William Vasquez, a minor;
Santiago Vasquez; Macrina Hernandez, individually and as next friend of Ximena
Chavez and Jose Chavez, minors; and Jose Chavez and Elena Rodriguez,
individually and as next friend of Estefania Rodriguez, Yesenia Rodriguez, and
Jesus Rodriguez, minors.  In this opinion, we refer to the Real Parties in
Interest collectively as “plaintiffs.”





[2] See
Union Pac. R.R. Co., 294 S.W.3d at 592 (“The information is not generally
known or readily available to Union Pacific’s competitors or its customers or
other businesses.  The information is not even generally known throughout the
company.  Rather the information is known only to a limited number of Union
Pacific employees and certain management employees.”); Bancservices Group,
Inc. v. Strunk & Assocs., L.P., No. 14-03-00797-CV, 2005 WL 2674985, at
*3 (Tex. App.—Houston [14th Dist.] Oct. 20, 2005, pet. denied) (mem. op.) (“[T]he
compilation and implementation of those parts were not generally known. . . .
All employees of Strunk were required to sign a confidentiality agreement.  In
addition, the banks who purchased the program were required to sign a
confidentiality agreement.”); In re The Cayman Island Firm of Deloitte &
Touche, No. 04-01-00491-CV, 2001 WL 1042233, at *4 (Tex. App.—San Antonio
Sept. 12, 2001, orig. proceeding) (not designated for publication) (“Pilling’s
affidavit details the efforts by DT Cayman to maintain the secrecy of the
Manual, including that its disclosure is limited internally on a ‘need to know’
basis.  Pilling also states that the information is highly confidential and
proprietary and would greatly benefit DT Cayman’s competitors.  Although the details
offered in the affidavit are sketchy, the affidavit is sufficient to satisfy
the initial burden imposed on DT Cayman.”).  





[3] Because
we hold that the plaintiffs did not meet their burden to demonstrate that the
discovery of the trade secret information is necessary to a fair adjudication
of their claim, we need not address Cooper Tire’s argument that discovery in a
product liability case is limited to the product at issue in the case.  Tex. R.
App. P. 47.1.