NO. 07-11-00066-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 19, 2011

_____

IN RE MICHAEL ROCKAFELLOW AND MTBC, LTD.,
RELATORS

_____

Before HANCOCK and PIRTLE, JJ., and BOYD, S.J.[1]

**ON PETITION FOR WRIT OF MANDAMUS**

Relators, Michael Rockafellow and MTBC, Inc., have filed their petition for writ of

mandamus, asking this Court to direct the Respondent, the Honorable Les Hatch of the

237th District Court of Lubbock County, to vacate the order of January 21, 2011,

authorizing the pre-suit deposition of Rockafellow by real party in interest, SalonQuest,

L.L.C., and disclosure of documents identifying MTBC's supplier of SalonQuest

products.  We will conditionally issue a writ of mandamus so directing.

Factual and Procedural History

On January 24, 2011, Rockafellow and MTBC filed a notice of appeal from the

trial court's order authorizing SalonQuest's pre-suit deposition of Rockafellow, president

of MTBC, and disclosure of documents related to MTBC's acquisition of SalonQuest's

---

[1]   John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

hair care products. See Tᴇx. R. Cɪv. P. 202. Because SalonQuest's petition indicated that neither Rockafellow nor MTBC were anticipated defendants in SalonQuest's contemplated suit related to the unauthorized distribution of SalonQuest's hair care products, that appeal was docketed as a regular appeal under cause number 07-11-00022-CV. However, SalonQuest amended its petition to indicate that it did, in fact, anticipate bringing various claims against MTBC. As a result, we dismissed that appeal for want of jurisdiction. In re Petition of SalonQuest, Inc., No. 07-11-00022-CV, 2011 Tex. App. LEXIS 1535 (Tex.App.—Amarillo Mar. 2, 2011, no pet.); see In re Jorden, 249 S.W.3d 416, 419 (Tex. 2008) (orig. proceeding); Thomas v. Fitzgerald, 166 S.W.3d 746, 747 (Tex.App.—Waco 2005, no pet.).

On February 10 and in response to SalonQuest's amendment, Rockafellow and MTBC filed their Emergency Motion for Stay of Deposition and Production of Documents. In their motion, they again sought review of the trial court's order authorizing pre-suit deposition of Rockafellow. At this point, Rockafellow and MTBC were no longer third parties to the contemplated litigation and were now "anticipated defendant[s]." See In re Jorden, 249 S.W.3d at 419.

In light of their status as anticipated defendants, mandamus is the proper vehicle by which they could seek review of the trial court's Rule 202 order. See In re Hewlett Packard, 212 S.W.3d 356, 360 (Tex.App.—Austin 2006, orig. proceeding). Consequently, we construed Rockafellow and MTBC's motion as a petition for writ of

2

mandamus.[2]  We noted, however, that there were a number of defects present in their petition.  See TEX. R. APP. P. 52.3.  By letter dated February 10, 2011, we notified the parties of these defects and afforded Rockafellow and MTBC a reasonable opportunity to cure said defects.  See TEX. R. APP. P. 44.3.  Rockafellow and MTBC amended their petition.  We sought a response from SalonQuest and received such on April 19.  On May 11, we received a reply on behalf of Rockafellow and MTBC.

Analysis

Availability of Mandamus

Again, because Rockafellow and MTBC are anticipated defendants in SalonQuest's contemplated litigation, mandamus is the proper vehicle by which to seek the relief requested.  See In re Hewlett Packard, 212 S.W.3d at 360.  The Texas Supreme Court has held that no adequate appellate remedy exists if a trial court orders a party to produce privileged trade secrets absent a showing of necessity.  In re Bass, 113 S.W.3d 735, 745 (Tex. 2003) (orig. proceeding) (citing In re Cont'l Gen. Tire, Inc., 979 S.W.2d 609, 615 (Tex. 1998) (orig. proceeding)).  Further, a trial court abuses its discretion when it erroneously compels production of trade secrets without a showing that the information is "material and necessary."  See id. at 738, 743; Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) (concluding that "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ").

---

[2] By order entered February 10, 2011, we also granted temporary relief by staying the deposition authorized by the trial court pending the disposition of this petition for writ of mandamus.  See TEX. R. APP. P. 52.10(b).

Trade Secret Privilege Generally

The trade secret privilege is governed generally by Texas Rule of Evidence 507:

> A person has a privilege, which may be claimed by the person or the person's agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice. When disclosure is directed, the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require.

TEX. R. EVID. 507. In the trial court, the party resisting discovery on the basis of the trade secret privilege must establish that the information is a trade secret. In re Cont'l Gen. Tire, 979 S.W.2d at 613. The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims. Id. If the requesting party meets this burden, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order. Id. In each circumstance, the trial court must weigh the degree of the requesting party's need for the information with the potential harm of disclosure to the resisting party. Id. In other words, when trade secret privilege is asserted as the basis for resisting production, the trial court must determine whether the requested production constitutes a trade secret; if so, the court must require the party seeking production to show reasonable necessity for the requested materials. In re Union Pac. R.R. Co., 294 S.W.3d 589, 591 (Tex. 2009) (orig. proceeding) (quoting In re Bass, 113 S.W.3d at 738).

Is the information sought trade secret?

A trade secret is "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over

4

competitors who do not know or use it." In re Bass, 113 S.W.3d at 739 (quoting Computer Assocs. Int'l. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1994)). Texas courts consider the following factors in determining whether the material at issue qualifies for the trade secret privilege: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. In re Union Pac. R.R., 294 S.W.3d at 592; In re Bass, 113 S.W.3d at 739. Because trade secret materials may not always "fit neatly into each factor every time" and because other factors may also be relevant depending on the circumstances of a particular case, we will weigh the factors in the context to determine whether the materials qualify as trade secret. In re Bass, 113 S.W.3d at 740.

In a situation factually similar to the instant case, our sister court weighed the factors of the balancing test to determine whether similar requested information was trade secret. See John Paul Mitchell Sys. v. Randalls Food Mkts., Inc., 17 S.W.3d 721, 726 (Tex. App.—Austin 2000, pet. denied). Paul Mitchell involved the same context at issue here: diversion of hair care products outside the manufacturer's preferred closed distribution chain. Id. at 726. In that case, Jade Drug Company sold Paul Mitchell products to Randalls grocery stores, which are non-salon locations. Id. As was and did Rockafellow, Jade was called on to provide its list of suppliers and resisted on the basis of trade secret. Id. Jade established by affidavit that there was restricted access to its

5

supplier list, it took time and money to develop the list, the list was valuable to the company, and the list was not readily obtained or duplicated. Id. at 738. The Austin court concluded that Jade established that the list was "carefully compiled and closely guarded" and met its burden of showing that its supplier list was trade secret. Id.

Here, by affidavit, Rockafellow explained that he has been in this business for twenty-five years and that it was "through substantial effort and expertise" that he developed his "vast network of industry contacts and sources." He also stated that his contacts and suppliers are "not readily known to the public, and to a large extent, not readily known in the industry itself." Rockafellow explained the confidential nature of his relationship with the suppliers and how MTBC's network of contacts and sources is the "most valuable part of its business" without which MTBC could not compete. Rockafellow went on to explain that only he communicates with MTBC's suppliers and, apart from him, only the office manager and the warehouse manager have access to information that would enable them to determine the identities of MTBC's suppliers. Both managers had been advised of the importance of keeping such information confidential. Rockafellow's affidavit also described the ramifications of having to divulge suppliers' identities which, according to Rockafellow, would quickly culminate in MTBC going out of business. In light of the relevant factors, we conclude that Rockafellow showed that access to the information sought is strictly limited and is not readily accessible, the information sought is highly valuable to MTBC, and the information sought is the product of a great deal of time and effort on Rockafellow's part and is not easily accessible or duplicated. See In re Union Pac. R.R., 294 S.W.3d at 592.

6

Seeing no compelling distinction between the instant case and that examined by our sister court in Paul Mitchell, we find our sister court's similar application of the balancing test in this context persuasive and conclude that Rockafellow carried his burden of showing that the supplier list and information related to the identities of MTBC's suppliers are trade secret. In doing so, he successfully shifted the burden to SalonQuest to establish that such information was necessary.

Is the Information Necessary or Essential to Fair Adjudication?

We now address the second prong of the test in which we must determine if discovery of this trade secret material is "necessary for a fair adjudication" of SalonQuest's claims. In re Cont'l Gen. Tire, 979 S.W.2d at 615. Necessity depends on whether the trade secret's production is "necessary or essential to the fair adjudication of the case." In re Union Pac. R.R., 294 S.W.3d at 592.

The Texas Supreme Court has acknowledged that it has not "state[d] conclusively what would or would not be considered necessary for a fair adjudication, indicating instead that the application of the test would depend on the circumstances presented." Id. (quoting In re Bridgestone/Firestone, Inc., 106 S.W.3d 730, 732 (Tex. 2003)). Although Rule 202 does not require a potential litigant to expressly state a viable claim, it appears that, when the requested deposition and disclosure involve disclosure of trade secret information, the requesting party's burden is heightened. See In re Cont'l Gen Tire, 979 S.W.2d at 613–14. With this in mind, we examine the general principles from cases on this subject.

7

It does appear to be generally accepted that, in order for trade secret production to be material to a claim or defense, a claim or defense must first exist.[3] See In re Bass, 113 S.W.3d at 743. That is, it is not sufficient that a requesting party use Rule 202 to discover trade secret information to determine *if* it has a claim.[4] See In re Hewlett Packard, 212 S.W.3d at 362. Nor is it an adequate showing of necessity when the requesting party makes general assertions of unfairness.[5] In re Union Pac. R.R., 294 S.W.3d at 592–93; In re Bridgestone/Firestone, 106 S.W.3d at 734 (concluding that "the mere possibility of unfairness is not enough to warrant disclosure" of trade secret). Further, there are cases that would suggest that we must also consider the availability of other means of acquiring the requested information.[6] See In re Cont'l Gen. Tire, 979 S.W.2d at 615 (adopting rule, pre-dating Texas Rule of Evidence 507, from Automatic Drilling Machs., Inc. v. Miller, 515 S.W.2d 256, 259 (Tex. 1974), that considers

---

[3] As the Austin court pointed out "rarely, if ever," will trade secrets be discoverable pursuant to Rule 202 because Rule 202 discovery will, by definition, be going on before any litigation has begun. In re Hewlett Packard, 212 S.W.3d at 364.

[4] By its own admission at the hearing on its petition, the existence and nature of SalonQuest's claims, if any, are speculative at best. SalonQuest itself expressed uncertainty as to whether litigation would follow: "It is just discovery, and then we can make a decision, if, in fact, litigation is warranted from that point on."

[5] So, SalonQuest's assertions in its response to this Court that highlight alleged wrongdoing on Rockafellow's part are inadequate to satisfy its burden of showing that the requested information is necessary to the fair adjudication of its claims, if any.

[6] The Texas Supreme Court most recently explained this consideration: "[T]rade secret information is generally discoverable when not allowing discovery would significantly impair a party's ability to establish or rebut a material element of a claim or defense. A party's ability is significantly impaired when the information is unavailable from any other source and no adequate alternative means of proof exist." In re Bridgestone/Firestone, 106 S.W.3d at 736. Here, MTBC has no contractual relationship with SalonQuest; by SalonQuest's own admission, it is MTBC's supplier(s) who has or have contracts with SalonQuest regarding the distribution of SalonQuest products.

8

availability from other sources in determining whether disclosure of trade secret is warranted); see also In re Bridgestone/Firestone, 106 S.W.3d at 736.

So, it would appear that the burden that shifted to SalonQuest upon the showing that the information it requested was trade secret is a fairly great one. And it is one that SalonQuest ultimately failed to satisfy because SalonQuest submitted no evidence in support of its position that the trade secret information sought was necessary or essential to the fair adjudication of its claims. See In re Union Pac. R.R., 294 S.W.3d at 592. The record before us is devoid of evidence on the issue of necessity.

SalonQuest's assertions come from its amended Rule 202 petition and from arguments of counsel at the hearing on its petition. Generally, pleadings are not competent evidence to prove the facts alleged in them even if, as here, the pleadings are sworn or verified. See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex. 1995); see also In re Contractor's Supplies, Inc., No. 12-09-00231-CV, 2009 Tex. App. LEXIS 6396, at *15–16 (Tex.App.—Tyler Aug. 17, 2009, orig. proceeding) (mem. op.) (concluding, in Rule 202 context, that pleadings are not evidence). Likewise, argument of counsel is not evidence. See Love v. Moreland, 280 S.W.3d 334, 336 n.3 (Tex.App.—Amarillo 2008, no pet.). With that, we can only conclude that SalonQuest failed to show that the trade secret information sought was "necessary for a fair adjudication" of its claims.

In summary, Rockafellow met his burden of showing MTBC's list of suppliers was trade secret and, thereby, shifted the burden to SalonQuest to show that disclosure of the information was necessary for a fair adjudication of its claims. SalonQuest failed to

9

make such a showing. Therefore, the trial court abused its discretion when it authorized the deposition of Rockafellow and compelled disclosure of trade secret information.

## Conclusion

Having concluded that the items in question were trade secrets and not discoverable as privileged information pursuant to Rule 507 and that Rockafellow, as a potential defendant, has no adequate remedy by appeal, we conclude that he has shown he is entitled to mandamus relief as requested. Accordingly, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order dated January 21, 2011, authorizing the pretrial deposition of Michael Rockafellow and compelling disclosure of documents concerning MTBC's acquisition of SalonQuest's products. Because we are confident the trial court will comply with this directive, the writ will issue only if the court fails to do so. Our disposition of this case serves to lift the stay previously imposed by the Court. See TEX. R. APP. P. 52.10(b).

Mackey K. Hancock
Justice
