ACCEPTED
15-25-00109-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/23/2025 5:08 PM
CHRISTOPHER A. PRINE
CLERK

**NO. \_\_\_-\_\_\_-_____-CV**

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/23/2025 5:08:40 PM
CHRISTOPHER A. PRINE
Clerk

IN RE STORABLE, INC.; REDNOVA LABS, INC. (D/B/A STOREDGE);
SITELINK SOFTWARE, LLC; EASY STORAGE SOLUTIONS, LLC; BADER
CO.; AND PROPERTY FIRST GROUP, LP

*Relators.*

Relating to Trial Court Cause No. 25-BC03A-0001
In the Third Division of the Texas Business Court

## PETITION FOR WRIT OF MANDAMUS

GREENBERG TRAURIG, LLP

Dale Wainwright
State Bar No. 00000049
dale.wainwright@gtlaw.com
Justin Bernstein
State Bar No. 24105462
justin.bernstein@gtlaw.com
300 West 6th Street
Suite 2050
Austin, Texas 78701
T: (512) 320-7200
F: (512) 320-7210

COUNSEL FOR RELATORS

**ORAL ARGUMENT REQUESTED**

## IDENTITIES OF PARTIES AND COUNSEL

### Relators

Storable, Inc.; RedNova Labs, Inc. (d/b/a storEDGE); Sitelink Software, LLC; Easy Storage Solutions, LLC; Bader Co.; and Property First Group, LP

### Counsel for Relators

Dale Wainwright
State Bar No. 00000049
dale.wainwright@gtlaw.com
Justin Bernstein
State Bar No. 24105462
justin.bernstein@gtlaw.com
GREENBERG TRAURIG, LLP
300 West 6th Street,
Suite 2050
Austin, Texas 78701
T: (512) 320-7200
F: (512) 320-7210

Ray T. Torgerson
State Bar No. 24003067
rtorgerson@porterhedges.com
Jonna N. Summers
State Bar No. 24060649
jsummers@porterhedges.com
Elizabeth "Liza" Eoff
State Bar No. 24095062
leoff@porterhedges.com
Lakshmi N. Kumar
State Bar No. 24144581
lkumar@porterhedges.com
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
T: (713) 226-6000
F: (713) 226-6000

Katherine G. Treistman
State Bar No. 00796632
katherine.treistman@arnoldporter.com
Andrew D. Bergman
State Bar No. 24101507
andrew.bergman@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002
T: (713) 576-2400
F: (713) 576-2499

**Real Party in Interest**

SafeLease Insurance Services, LLC

**Counsel for Real Party**

Judd E. Stone II
State Bar No. 2407670
judd@stonehilton.com
Christopher D. Hilton
State Bar No. 24087727
STONE HILTON PLLC
600 Congress Ave.,
Austin, Texas 78701
T: (737) 465-7248

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
Susanna R. Allen
State Bar No. 24126616
sallen@yettercoleman.com
Luke A. Schamel
State Bar No. 24106403
lschamel@yettercoleman.com
Shannon N. Smith
State Bar No. 24110378
ssmith@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
T: (713) 632-8000

**Respondent**

Honorable Melissa Andrews
Third Division of the Texas Business Court
Herman Marion Sweatt Courthouse
Courtroom 421
1000 Guadalupe St.
Austin, Texas 78701

# TABLE OF CONTENTS

*Page*

NO. \_\_\_-\_\_\_-_____-CV ..................................................................................1

IDENTITIES OF PARTIES AND COUNSEL................................................... II

TABLE OF CONTENTS ................................................................................ IV

STATEMENT REGARDING MANDAMUS RECORD ........................... VIII

DEFINITIONS................................................................................................ IX

STATEMENT OF JURISDICTION.................................................................X

STATEMENT REGARDING ORAL ARGUMENT....................................... XI

STATEMENT OF THE CASE ......................................................................XII

ISSUE PRESENTED ................................................................................... XIII

INTRODUCTION .............................................................................................1

STATEMENT OF FACTS................................................................................. 2

I.      The Parties Are Competitors Alleging Tortious Interference
        With Each Other's Agreements With Clients. ........................................2

II.     SafeLease Requested Production Of Storable's Client List. ...................3

III.    The Trial Court Ordered Storable To Produce The Client List. .............4

ARGUMENT...................................................................................................... 5

I.      Standard Of Review.................................................................................5

II.     Storable's Customer List Is A Trade Secret............................................6

        A.      Storable Takes Reasonable Measures To Keep The Client
                List Secret. ...................................................................................7

        B.      The Client List derives economic value from its secrecy. ...........9

        C.      Storable did not waive its trade secret privilege. .......................10

III.    SafeLease Did Not Prove That It Needs The Client List. .....................12

IV.     The Protective Order Does Not Negate The Risk Of Producing
        The Client List. .....................................................................................15

        A.      Confidentiality designations do not supersede trade secret
                protection...................................................................................15

  B.  SafeLease may later argue that the Protective Order is void. ...............................................................................16

  C.  SafeLease has shown there is a material risk that it will circumvent the Protective Order. ...................................17

V.  Storable Has No Adequate Remedy By Appeal. ....................................18

PRAYER .........................................................................................................19

RULE 52.3(J) CERTIFICATION ................................................................ 20

CERTIFICATE OF COMPLIANCE ............................................................21

CERTIFICATE OF SERVICE...................................................................... 22

APPENDIX .................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 4X Indus., LLC*,
639 S.W.3d 801 (Tex. App.—Houston [14th Dist.] 2021, no pet.) .......12, 13, 15

*Automatic Drilling Machines, Inc. v. Miller*,
515 S.W.2d 256 (Tex. 1974) .................................................................13

*In re Bass*,
113 S.W.3d 735 (Tex. 2003) .................................................................18

*In re Bridgestone/Firestone, Inc.*,
106 S.W.3d 730 (Tex. 2003) (orig. proceeding) .................................12

*In re Cont'l Gen. Tire, Inc.*,
979 S.W.2d 609 (Tex. 1998) .........................................................*passim*

*In re Diamond Shamrock Ref. Co., L.P.*,
No. 07-06-0315-CV, 2007 WL 63370 (Tex. App.—Amarillo Jan.
10, 2007, no pet.) ...............................................................................13

*In re Durnin*,
619 S.W.3d 250 (Tex. 2021) ...................................................................5

*In re Energy XXI Gulf Coast, Inc.*,
No. 01-10-00371-CV, 2010 WL 5187730 (Tex. App.—Houston
[1st Dist.] Dec. 23, 2010, no pet.).......................................................16

*In re Hewlett Packard*,
212 S.W.3d 356 (Tex. App.—Austin 2006, no pet.)...........................15

*Houston Livestock Show & Rodeo, Inc. v. Dolcefino Commc'ns, LLC*,
702 S.W.3d 675 (Tex. App.—Houston [1st Dist.] 2024, no pet.)........6

*Reilly v. Premier Polymers*,
LLC, 2020 WL 7074253 (Tex. App.—Houston [14th Dist.] Dec. 3,
2020, pet. dism'd) .................................................................................8

*In re Shipman*,
    540 S.W.3d 562 (Tex. 2018) (orig. proceeding) (per curiam) ...........................19

*In re Union Pac. R. Co.*,
    294 S.W.3d 589 (Tex. 2009) (orig. proceeding) ...................................6, 7, 16, 18

*Walker v. Packer*,
    827 S.W.2d 833 (Tex. 1992) ...........................................................................19

*In re Waste Mgmt of Texas, Inc.*,
    392 S.W.3d 861 (Tex. App.—Texarkana 2013, no pet.)....................................16

**Rules**

Tex. R. Evid. 507(a).............................................................................6, 12, 16, 17

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 134A.002(6) ..........................................................6

## STATEMENT REGARDING MANDAMUS RECORD

Relators are separately filing a sworn mandamus record in support of this petition for writ of mandamus. TEX. R. APP. P. 52.7(a)(1). References to the mandamus record, which is consecutively paginated, are in the form "[Exhibit #]MR[Page #]." Selected materials from the mandamus record are attached in the Appendix to this petition as required or appropriate. TEX. R. APP. P. 52.3(k). References to exhibits in the Appendix are in the form "Appx. [Appendix tab #], MR[ page #]."

The motion giving rise to the ruling at issue was decided without a hearing, so no testimony was adduced regarding that motion. TEX. R. APP. P. 52.7(a)(2).

# DEFINITIONS

| | |
|---|---|
| Client List | Documents containing trade secrets sufficient to show the name, city, state, and zip code of all self-storage facilities using Storable's FMS platforms as of December 30, 2024 |
| FMS | Facility management software, which is used by operators of self-storage facilities to manage those facilities |
| Production Order | The trial court's May 28, 2025 order to produce the Client List |
| SafeLease | Real Party in Interest SafeLease Insurance Services, LLC |
| Storable | Relators Storable, Inc.; RedNova Labs, Inc. (d/b/a storEDGE); Sitelink Software, LLC; Easy Storage Solutions, LLC; Bader Co.; and Property First Group, LP |

## STATEMENT OF JURISDICTION

This Court has the power to grant the writ of mandamus sought in this petition under article V, section 6 of the Texas Constitution, section 22.221(b) of the Texas Government Code, and Rule 52 of the Texas Rules of Appellate Procedure. *See* TEX. GOV'T CODE § 22.221(a), (c–1) ("Each court of appeals or a justice of a court of appeals may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court").

## STATEMENT REGARDING ORAL ARGUMENT

Relators believe that oral argument would assist the Court, in particular by allowing the Court to probe SafeLease's vague claims that production of this trade secret is necessary. However, given the imminent June 13, 2025 deadline for producing the trade secret, Relators wish to forgo oral argument if delay from oral argument would prevent the Court from granting a stay or a writ of mandamus before the production deadline.

## STATEMENT OF THE CASE

*Nature of the Case*:     This is a lawsuit between competitors in the self-storage industry. SafeLease, which sells insurance to operators of self-storage facilities, alleges that Storable is tortiously interfering with SafeLease's agreements with operators and attempting to achieve a monopoly in tenant insurance. 2MR47–83. Storable, which sells both insurance and software to operators, alleges that SafeLease is tortiously interfering with Storable's operator clients and using those clients' logins to unlawfully harvest data from its files. 12MR246–276.

*Trial Court Proceeding*:     Litigation of the merits of the parties' claims is ongoing. During discovery, SafeLease demanded that Storable produce a list of facilities (customers) that use Storable's FMS. Storable objected to producing this trade secret. 11MR234–235.

*Respondent's Action*:     Judge Melissa Andrews, presiding over the Third Division of the Texas Business Court, ordered Storable to produce the Client List by June 13, 2025. Appx. A at MR290–292; Appx. B.

# ISSUE PRESENTED

1.    Did the trial court clearly abuse its discretion by ordering Storable to produce its trade secret Client List to its competitor even though that competitor did not prove production is necessary to enable fair adjudication of the claims?

# INTRODUCTION

SafeLease encourages Storable's FMS clients to either switch to FMS competitors or violate Storable's terms of use by helping them circumvent Storable's security measures. Now, while the parties are litigating Storable's claims for tortiously interfering with clients and illegally harvesting data, SafeLease is demanding that Storable produce to it the trade secret Client List identifying every one of the thousands of Storable's FMS clients throughout the world. This Client List is a highly valuable trade secret that Storable developed through years of effort and protects with robust safeguards against disclosure.

SafeLease failed to meet its burden to prove that producing the Client List is necessary for a fair adjudication. Relatedly, SafeLease also failed to provide a legitimate reason why it cannot use alternative, less commercially sensitive, information that would equally achieve the objectives SafeLease articulated. This leaves troubling questions about how SafeLease will use the trade secret.

Despite these deficiencies, the trial court ordered production of the Client List. This Court should enforce Texas's strong protections of trade secrets and find ordering production of the Client List to be an abuse of discretion for which Storable lacks an adequate remedy by appeal.

## STATEMENT OF FACTS

**I.     The Parties Are Competitors Alleging Tortious Interference With Each Other's Agreements With Clients.**

Storable licenses FMS products to self-storage facility operators. 12MR258. Storable also offers these operators "insurance plans that compete directly with products and services of SafeLease." 2MR48. However, Storable does not require operators who use Storable's FMS to purchase insurance from Storable. 12MR258 ¶ 13.

SafeLease alleges that it needs access to Storable's FMS to provide insurance services to facilities that use Storable's FMS. 2MR74. Rather than reach an agreement with Storable to access Storable's FMS, SafeLease enters agreements with operators under which operators provide their log-in credentials to SafeLease. 2MR74 ¶ 118. When Storable blocked this method of access, SafeLease sued for tortious interference with their agreements with operators, and for attempted monopolization of the market for tenant insurance at self-storage facilities. 2MR72–74. SafeLease's monopolization claim relies in part on Storable's market share in the alleged FMS market, because SafeLease argues that Storable is leveraging power in the FMS market to gain market share in the market for tenant insurance. 2MR67–68.

Storable filed counterclaims, two of which are relevant to this petition. The first counterclaim alleges tortious interference with Storable's terms of

service, which prohibit operators and their vendors from enabling SafeLease's method of access. 12MR264. The second counterclaim alleges that SafeLease is illegally harvesting data about facilities and tenants from Storable's FMS. 12MR265. More details about this vigorous dispute are provided in Storable's Appellant's Brief filed in Appeal No. 15-25-00020-CV, which is a pending interlocutory appeal challenging a temporary injunction SafeLease obtained in this case.

## II.  SafeLease Requested Production Of Storable's Client List.

SafeLease demanded that Storable produce "Documents sufficient to show all self-storage facilities that use your facility management software, including addresses for those facilities." 11MR234–235.[1] Storable objected that producing the Client List would reveal confidential, commercially sensitive information and violate the privilege against disclosure of trade secrets. 11MR234–235; 21MR794–803.

Business Court Local Rule 4(d) states that a prerequisite for discovery motions is that the parties file discovery letters limited to 700 words. The parties each filed a discovery letter. 13MR; 15MR. SafeLease's letter argued

---

[1]  SafeLease later adjusted this request to require identification of the FMS used at each facility but limit the request to facilities as of a certain date. The adjusted request is: "Documents sufficient to show all self-storage facilities that use your facility management software, including the City, State, ZIP, and FMS for those facilities, as of December 30, 2024." 11MR277. All of the arguments in this Petition apply equally to both versions of this request.

that the Client List "is critical for defining the relevant antitrust market and assessing Storable's market power and the competitive impact of its conduct." 13MR277.

To satisfy that purported need, Storable offered to provide information sufficient to show the total number of facilities that use Storable's FMS, including a breakdown by state. 15MR285. Storable also offered mechanisms to verify the accuracy of this information, including allowing SafeLease's economic expert to review the Client List while it remained in Storable's possession. 15MR285. SafeLease rejected these alternative methods of achieving its purported need. 15MR285.

## III. The Trial Court Ordered Storable To Produce The Client List.

Rather than request that the parties brief a discovery motion, which would have allowed space to develop arguments more fully, the trial court ordered Storable to produce the Client List. 16MR290, 292. The ruling based on the word limits under Rule 4(d) surprised Storable.

Storable filed a motion for reconsideration, supported by a declaration and company handbook, establishing that the Client List is a protected trade secret, that SafeLease had not met its burden to invade that protection, and that the Protective Order does not moot the need for that protection.

21MR794–862. Storable also filed a motion requesting the trial court stay the production deadline. 19MR.

The trial court set the motion for stay and motion for reconsideration for written submission on June 12 at 2 p.m. and June 23, respectively. 22MR. On June 12, the trial court stayed the production deadline until June 24. 25MR.

On June 23, 2025, the trial court signed an order titled "Order on Motions for Reconsideration; Other Relief." Appx. B, 32MR. This order denied, without providing reasons, reconsideration of the Production Order and reconsideration of Storable's motion to modify the general protective order so that it barred Adam Locke[2] from viewing documents designated "outside counsel's eyes only." *Id*. This order prohibited Adam Locke from viewing one specific document designated outside counsel eyes only—the Client List. *Id*.

## ARGUMENT

### I.      Standard Of Review.

"Mandamus relief is appropriate if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy." *In re Durnin*,

_____

[2]      The issue of whether Adam Locke should be permitted to view produced documents is described below in Section IV.C. Mr. Locke was SafeLease's general counsel at one time and states his role has changed to outside counsel.

619 S.W.3d 250, 252 (Tex. 2021). "If the information is a trade secret and the requesting parties do not need it, an order that requires disclosure is a clear abuse of discretion." *In re Union Pac. R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009) (orig. proceeding).

## II.   Storable's Customer List Is A Trade Secret.

"A person has a privilege to refuse to disclose and to prevent other persons from disclosing a trade secret owned by that person, unless the court finds that non-disclosure will tend to conceal fraud or otherwise work injustice." TEX. R. EVID. 507(a). A trade secret is:

> any formula, design, ... or **list of actual** or potential **customers** ... if:
>
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

TEX. CIV. PRAC. & REM. CODE § 134A.002(6) (emphasis added).

"Courts generally recognize that customer lists or financial information that can be used to obtain customers or to negotiate pricing or fees to obtain an advantage in the market qualifies as a trade secret." *Houston Livestock Show & Rodeo, Inc. v. Dolcefino Commc'ns, LLC*, 702 S.W.3d 675, 690 (Tex.

-6-

App.—Houston [1st Dist.] 2024, no pet.). The subsections below show that the Client List meets both the "reasonable measures" and "economic value" elements of the definition of trade secret.[3]

## A. Storable Takes Reasonable Measures To Keep The Client List Secret.

In a declaration submitted to the trial court, Storable's CEO Chuck Gordon details Storable's efforts to maintain the secrecy of its Client List. 21MR807–809. This list does not exist as a standalone document and only select few Storable employees have the ability to aggregate the data underlying the Client List. *Id.* ¶ 5. The Client List exists only in electronic format; no hard copies are created, and electronic versions of the list are not created for any other purposes and thus are not disseminated outside of Storable. *Id.*

Storable maintains strict privacy and security policies for its employees to protect trade secrets and other proprietary materials, including those in

---

[3] Before the effective date of this statute defining trade secret, the Texas Supreme Court stated: "To determine whether a trade secret exists, we weigh the six factors set forth in the Restatement of Torts in the context of the surrounding circumstances: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *In re Union Pac. R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009). It is not clear whether these factors are still relevant, but to the extent they are, the subsections below also establish these factors.

electronic format such as client lists. *Id.* ¶ 6. For example, Storable provides all of its staff with securely configured company laptops. 21MR837. Storable's employees are required to use their company-issued laptops for their work and are strictly prohibited from conducting company business on personal computers. *Id.*

While Storable allows employees to use personal smartphones to access email and other business applications when they are not able to use their company-issued laptops, employees are prohibited from saving confidential company information on those personal devices. *Id.* Storable provides its employees with guidelines to ensure that their use of those devices for work is secure. 21MR837–838.

Storable takes security awareness among its employees seriously. Staff members are required to undergo security awareness training at least twice each year, and new hires are trained promptly upon starting. 21MR838. Storable also conducts simulated "phishing" exercises to raise awareness among employees regarding security practices; any employee who fails the exercise is required to undergo remedial training. *Id.* Storable also regularly publishes a security awareness newsletter. *Id.* These are reasonable measures to maintain the secrecy of Storable's trade secrets, including its client lists. *See, e.g., Reilly v. Premier Polymers*, LLC, 2020 WL 7074253, at

*5–6 (Tex. App.—Houston [14th Dist.] Dec. 3, 2020, pet. dism'd) (trade secret found where party exercised information security practices including password protection and access limitations).

### B.   *The Client List derives economic value from its secrecy.*

The Client List is among Storable's most competitively sensitive secrets. 21MR808 ¶ 7. Even an inadvertent disclosure of part of the Client List could threaten the core of Storable's business. 21MR808 ¶ 11.

Much of the Client List's value derives from the fact that the information it contains is not publicly known or accessible. 21MR808 ¶ 9. Storable developed the Client List through extensive efforts over years of building its FMS customer base. 21MR808 ¶ 9. If disclosed, the Client List would provide Storable's competitors with thousands of potential customer leads, nonpublic information regarding Storable's presence in different geographic areas, and other competitive intelligence. 21MR808 ¶ 9. In addition, disclosure would make the Client List less valuable because the facility and tenant clients would be subject to increased risk that competitors will poach them after Storable put in the hard work of identifying those clients and convincing them of the benefits of FMS and insurance. 21MR808 ¶ 9.

The trial court overlooked the damage from disclosing the Client List to SafeLease because it believed "SafeLease does not compete in the FMS market." 16MR291 n.2. This reasoning is inaccurate in three ways. *First*, SafeLease admitted that it is actively encouraging clients to switch from Storable's FMS to other competitors' FMS. 3MR90 (Feb. 13 Tr. 82:11-14). Therefore, disclosing the Client List to SafeLease will destroy value Storable created by keeping the Client List secret. *Second*, while SafeLease does not compete against Storable directly in the FMS market, it draws approximately 70% of its insurance customers from Storable's FMS customer pool. 4MR100 (Feb. 14 Tr. 28:17-21). SafeLease and Storable *do* compete for insurance clients, so giving SafeLease access to Storable's FMS client list would enable SafeLease to directly target Storable's clients. 21MR808 ¶¶ 8, 10. *Third*, courts must protect trade secrets from disclosure even "in actions that are not between business competitors" and are "subject to an appropriate protective order." *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998).

## C. *Storable did not waive its trade secret privilege.*

Waiver is an "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Paxton v. City of Dallas*, 509 S.W.3d 247, 263 (Tex. 2017). "[T]he burden of proof is on the

party relying on the waiver." Lang v. Lee, 777 S.W.2d 158, 164 (Tex. App.—Dallas 1989, no writ). Trade secret privilege is extraordinarily difficult to waive. Even disclosure of the trade secret itself is not necessarily waiver. *HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 266 (Tex. 2021).

Storable has adequately preserved its trade secret privilege for the Customer List by objecting in a response to the request for production, in a pre-motion letter, and in the motion for reconsideration. Storble's response to SafeLease's request to produce the Client List objected that the request sought "confidential, proprietary, and commercially sensitive information of the highest degree." MR882–883. Storable's response to SafeLease's pre-motion letter argued it should not have to produce the Client List because it is "a highly confidential document—to a hostile competitor," which describes the trade secret privilege. 15MR285.

Asserting a privilege does not require "magic words." *Univ. of Tex. Sys. v. Franklin Ctr. for Gov'l & Pub. Integrity*, 675 S.W.3d 273, 285 (Tex. 2023). Therefore, Storable was not required to use the magic words "trade secret" to preserve when objecting to production of commercially sensitive information, especially because customer lists are "generally recognize[d]" as trade secrets. *Houston Livestock Show & Rodeo, Inc. v. Delcefino*

*Commc'ns, LLC*, 702 S.W.3d 675, 690 (Tex. App.—Houston [1st Dist.] 2024, no pet.).

## III.  SafeLease Did Not Prove That It Needs The Client List.

"Trial courts should apply Rule 507 as follows:  First, the party resisting discovery must establish that the information is a trade secret.  The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims." *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998) (orig. proceeding). Necessary means "essential" or something that "must exist or happen and cannot be avoided; inevitable." NECESSARY, Black's Law Dictionary (12th ed. 2024).

To meet that burden, SafeLease "cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732–33 (Tex. 2003) (orig. proceeding). "The supreme court has made clear that this is an evidentiary burden." *In re 4X Indus., LLC*, 639 S.W.3d 801, 813 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Therefore, in *4X Industrial*, the trial court abused its discretion by ordering production of a trade secret because, while the requesting party *asserted* that it could not prove its claim for trade secret

-12-

misappropriation without production of trade secrets, the requesting party failed to provide *evidence* of "specific facts" demonstrating "why the requested documents from 4X Industrial are essential—as opposed to helpful—to a fair adjudication." *Id.* at 814; *see also In re Diamond Shamrock Ref. Co., L.P.*, No. 07-06-0315-CV, 2007 WL 63370, at *1 (Tex. App.—Amarillo Jan. 10, 2007, no pet.) (holding the requesting party must prove necessity "through the presentation of competent evidence. If it does not, then compelling disclosure amounts to an instance of abused discretion warranting mandamus relief"). SafeLease's asserted "need" for the Client List is inadequate for several reasons.

*First*, SafeLease has not explained why alternatives to producing the Client List are insufficient for the purpose SafeLease articulated—calculating Storable's FMS market share. *See Automatic Drilling Machines, Inc. v. Miller*, 515 S.W.2d 256, 260 (Tex. 1974) (holding the trial court abused its discretion by ordering production of a trade secret without considering alternatives). SafeLease failed to articulate why it could not calculate this market share using the total number of facilitates using Storable's FMS, without the names and addresses of the individual facilities. SafeLease vaguely argued that it must possess the Client List to "verify this information," 13MR277, but SafeLease provided no reason to believe that

-13-

verification would be necessary or even feasible. Verification would require subpoenaing *all* self-storage facilities in the world to determine if Storable erroneously included or excluded them from the Client List.[4] Such an outrageous process is not "necessary for a fair adjudication of its claims." *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998) (orig. proceeding). If SafeLease used the term "verification" to refer to scrutinizing the list itself, that could be achieved by Storable's offer to allow SafeLease's economic expert to analyze the Client List while it remains in Storable's possession.

*Third*, even if SafeLease's interest in the Client List were legitimate, that interest may be mooted by Storable's partial motion for summary judgment, which challenges SafeLease's attempted monopolization claim on grounds unrelated to Storable's alleged FMS market share. Potentially moot information cannot be "necessary." Storable's motion for summary judgment argues that SafeLease's monopolization claim fails as a matter of law because, among other reasons, Storable's conduct is not anticompetitive, Storable is not dangerously close to monopolizing the alleged *tenant insurance* market, and Storable has no intent to monopolize that market.

---

[4] It would not help SafeLease's attempted-monopolization claim to determine that facilities were erroneously added to the Client List because each such determination would reduce Storable's FMS market share.

17MR. The reply supporting this motion for summary judgment is due July 18.

## IV.  The Protective Order Does Not Negate The Risk Of Producing The Client List.

The trial court ordered production of the Client List because the Protective Order, which sets rules for confidentiality of all documents produced in this case, allows Storable to designate the Client List "outside counsel's eyes only." 16MR291; 6MR. This is insufficient because confidentiality designations do not supersede trade secret protection, and because the particular Protective Order in this case is currently subject to challenges that may void it and have identified gaps in its protection.

### A.  *Confidentiality designations do not supersede trade secret protection.*

"That a trial court has ordered the parties to enter into a protective order with respect to trade secret information does not dispense with the requesting party's burden to establish the necessity for the discovery of the trade secret information to fairly adjudicate a claim." *In re Hewlett Packard*, 212 S.W.3d 356, 364 (Tex. App.—Austin 2006, no pet.); *see also In re 4X Indus., LLC*, 639 S.W.3d 801, 814–15 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (collecting cases holding that a requesting party "must first show that it met its burden" to prove necessity before a court should "address whether the parties' agreed protective order is sufficient to protect [the

-15-

resisting party's] trade secrets"); *In re Waste Mgmt of Texas, Inc.*, 392 S.W.3d 861, 869 (Tex. App.—Texarkana 2013, no pet.). The Texas Supreme Court relied on this rule to grant mandamus vacating an order requiring production of a trade secret. *In In re Union Pacific R. Co.*, 294 S.W.3d 589 (Tex. 2009). The court noted: "The trial court did enter an order restricting those who could view the rate structures, but that alone does not ensure that an order [to produce] will not violate the trade secret privilege." *Id.* at 593.

This rule applies even when the protective order tightly restricts who can view a produced document. "There is no authority that would allow a trial court to order a party to produce privileged documents to the opposing party's attorney, even with the qualification that the documents be produced for 'attorney's eyes only' and subject to the parties' protective order." *In re Energy XXI Gulf Coast, Inc.*, No. 01-10-00371-CV, 2010 WL 5187730, at *8 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, no pet.) (orig. proc.); Tex. R. Evid. 507(a) (describing trade secret protection as a "privilege to refuse to disclose").

## B. *SafeLease may later argue that the Protective Order is void.*

Storable filed a separate appeal from the same case (Appeal No. 15-25-00020-CV). In that appeal, Storable argues that the trial court was required to remand this case to the district court before signing any orders because

SafeLease untimely filed its notice of removal. *See* Appellant's Br. Argument Section I. If Storable prevails on that issue, SafeLease may argue that the Protective Order is void or not enforceable by the business court that issued it, which might endanger any trade secrets relying on the Protective Order.

### C. *SafeLease has shown there is a material risk that it will circumvent the Protective Order.*

"[T]he trial court should consider any potential inadequacies of the protective order in weighing the competing interests of the parties under Rule 507. … This is especially true when the trial court has specific, fact-based grounds for believing that trade secrets may be disclosed in violation of its protective order." *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 614 (Tex. 1998).

Several facts indicate that trade secrets might be used for SafeLease's business purposes despite the Protective Order. *First*, SafeLease has been sharing "Outside Counsel's Eyes Only" documents with Adam Locke, who as recently as June 2023 served as SafeLease's "Chief Operating Officer and General Counsel." 8MR169.[5] *Second*, SafeLease has repeatedly circumvented Storable's security measures, including through creating

---

[5] Today the trial court ordered that Adam Locke may not view the Client List, 32MR1077, but that does not negate the point that SafeLease has shared confidential information with Adam Locke and planned to share the Client List with him until ordered to desist.

-17-

alternative user accounts and through using bots to emulate customers.[6] For example, SafeLease's petition admits SafeLease "was able to engineer a solution to restore access" to Storable's FMS after Storable's security initiative blocked SafeLease's access. 2MR62. This cavalier attitude toward security safeguards shows that the Protective Order will not ensure that the Client List stays secret if SafeLease obtains it. *Third*, the Protective Order allows documents designated "Outside Counsel's Eyes Only" to be shared with vendors and "potential" independent experts or consultants and their staff. 6MR109–110. These third parties may remain outside of the trial court's contempt power to enforce the Protective Order.

## V.    Storable Has No Adequate Remedy By Appeal.

A party has no adequate remedy by appeal if it is improperly ordered to produce a trade secret. *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 615 (Tex. 1998); *see also In re Bass*, 113 S.W.3d 735, 745 (Tex. 2003) (granting mandamus because "no adequate appellate remedy exists if a trial court orders a party to produce privileged trade secrets absent a showing of necessity"); *In re Union Pac. R. Co.*, 294 S.W.3d 589, 593 (Tex. 2009) (similar).

---

[6]    This behavior, and the evidence showing it (including SafeLease's admissions), is described in Appeal No. 15-25-00020-CV, in Appellant's Brief pages 5–6, 58–59.

Once Storable produces the Client List, the trade secret will be exposed and may be irretrievably disseminated regardless of whether Storable prevails on appeal after a final judgment. "After the [privileged documents] had been inspected, examined and reproduced ... a holding that the court had erroneously issued the order would be of small comfort to relators." *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (alterations in original). For this reason, it is well-settled that mandamus is the proper remedy for a discovery order that compels production beyond what is permissible. *In re Shipman*, 540 S.W.3d 562, 565 (Tex. 2018) (orig. proceeding) (per curiam).

## PRAYER

For these reasons, Relators request that this Court grant this petition for writ of mandamus and vacate the Production Order. Relators also pray for such further relief, in law or equity, to which they may be entitled.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: */s/Dale Wainwright*
    Dale Wainwright
    State Bar No. 00000049
    dale.wainwright@gtlaw.com
    Justin Bernstein
    State Bar No. 24105462
    justin.bernstein@gtlaw.com
    300 West 6th Street, Suite 2050
    Austin, Texas 78701
    T: (512) 320-7200
    F: (512) 320-7210

COUNSEL FOR RELATORS

## RULE 52.3(J) CERTIFICATION

In compliance with Rule 52.3(j) of the Texas Rules of Appellate Procedure, I certify that I have reviewed the Petition for Writ of Mandamus and have concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

*/s/ Justin Bernstein*
Justin Bernstein

**CERTIFICATE OF COMPLIANCE**

This brief complies with the length limitations of TEX. R. APP. P. 9.4(i)(2) because this brief consists of 4,076 words as determined by Microsoft Word Count, excluding the parts of the petition exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Justin Bernstein*
_____

Justin Bernstein

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served on counsel of record by using the Court's CM/ECF system on the 23rd day of June 2025, addressed as follows:

STONE HILTON PLLC

Judd E. Stone II
State Bar No. 2407670
judd@stonehilton.com
Christopher D. Hilton
State Bar No. 24087727
600 Congress Ave.,
Austin, Texas 78701
T: (737) 465-7248

YETTER COLEMAN LLP

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
Susanna R. Allen
State Bar No. 24126616
sallen@yettercoleman.com
Luke A. Schamel
State Bar No. 24106403
lschamel@yettercoleman.com
Shannon N. Smith
State Bar No. 24110378
ssmith@yettercoleman.com
811 Main Street, Suite 4100
Houston, Texas 77002
T: (713) 632-8000

*COUNSEL FOR REAL PARTY*

I also certify that a copy of the foregoing document will be served by email on Respondent on the 23rd day of June 2025, addressed as follows:

Honorable Melissa Andrews
Third Division of the Texas Business Court
Herman Marion Sweatt Courthouse
Courtroom 421
1000 Guadalupe St.
Austin, Texas 78701
BCDivision3A@txcourts.gov


*/s/ Justin Bernstein*
Justin Bernstein

# APPENDIX

| Tab A | The trial court's May 28, 2025 order to produce the Client List |
|-------|----------------------------------------------------------------|
| Tab B | The trial court's June 23, 2025 order denying Storable's motion to reconsider the Production Order |

# Appendix A



**The Business Court of Texas,
Third Division**

| | | |
|---|---|---|
| SAFELEASE INSURANCE SERVICES LLC, | § § § § | |
| *Plaintiff,* | § | |
| v. | § | Cause No. 25-BC03A-0001 |
| STORABLE, INC., et al., | § § | |
| *Defendants.* | § § | |

═══════════════════════════════════════

**Discovery Order**

═══════════════════════════════════════

Before the Court is plaintiff SafeLease's discovery-dispute letter, filed under Business Court Local Rule 4(d), and the response letter filed by defendants (collectively, Storable). SafeLease seeks, and Storable resists, production of documents responsive to SafeLease's requests for production (RFPs) numbers 10, 12, and 20. The Court ORDERS as follows:

**RFP 10:** Storable is **ORDERED** to produce documents sufficient to show the name, city, state, and zip code of all self-storage facilities using Storable's FMS platforms as of December 30, 2024.

Storable asserts that its customer list with addresses is "a highly confidential document"[1] and that SafeLease is "a hostile competitor with whom Storable is in litigation."[2] The agreed protective order in this case contains "confidential" and "outside counsel's eyes only" (OCEO) designations, both available to Storable to protect its confidential information as appropriate. Because the parties previously disputed whether certain counsel should have access to OCEO material, the Court directs them to *Westlake Longview Corp. v. Eastman Chemical Co.*, 2025 Tex. Bus. 19, for guidance on the evidentiary standards applicable to such disputes.[3]

**RFP 12:** Storable is **ORDERED** to either (a) produce documents sufficient to show all authorized users on storEDGE and SiteLink as of December 30, 2024 or (b) amend its RFP 12 response to state that no responsive documents exist and give the number of authorized users on storEDGE and SiteLink on December 30, 2024.

Storable states that "no [] documents exist" that are responsive to RFP 12, it "does not maintain lists of authorized users," and it will amend its discovery responses "to reflect that no responsive documents exist." If that is the case, amending the discovery responses is sufficient. Storable is correct that it is not

---

[1] Storable did not assert that the information at issue constitutes a trade secret.

[2] While SafeLease may be a competitor of Storable's insurance affiliates, the customer list at issue is for Storable's FMS customers. SafeLease does not compete in the FMS market.

[3] The *Westlake* decision addresses access for in-house counsel but notes that federal courts have applied the same test for both outside and in-house lawyers. *Westlake*, 2025 Tex. Bus. 19 at n.16.

obligated to create a document that does not exist in response to this RFP.

The Court notes, however, that RFP 12 is not limited to a list of authorized users and "documents" is broadly defined to include not just physical files but also, for example, electronic data.[4] If Storable has data that shows the authorized users on storEDGE and SiteLink as of December 30, 2024, Storable need not process such data to create a list for SafeLease but must produce the data (subject to privilege).[5] The Court raises this because Storable offered "to produce the total number of authorized users and information showing whether other tenant insurance providers have authorized users," and it is plausible that the data from which Storable would derive that information would be responsive to RFP 12.

**RFP 20:** Storable is **ORDERED** to produce documents evidencing the specific security measures it took that affected SafeLease's access to Storable's FMS, other than computer code, and when it took such measures.

This reflects SafeLease's offer to limit its request to exclude computer code and Storable's offer to produce "documents sufficient to show the specific security measures that affected SafeLease and when it took those measures."

Storable is **ORDERED** to comply with this order by June 13, 2025.

---

[4] Under the parties' agreed ESI protocols, electronic data should be produced in TIF format.

[5] Storable need not produce data that is duplicative—only data that is "sufficient to show" the authorized users on the given date.

Date signed: May 28, 2025

Hon. Melissa Andrews
Judge of the Texas Business Court,
Third Division

4

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 101329629
Filing Code Description: No Fee Documents
Filing Description: Discovery Order
Status as of 5/28/2025 12:43 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ray TTorgerson | | rtorgerson@porterhedges.com | 5/28/2025 12:37:00 PM | SENT |
| Delonda Dean | | ddean@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |
| Yetter Coleman | | efile@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |
| Carolyn Reed | | creed@porterhedges.com | 5/28/2025 12:37:00 PM | SENT |
| Courtney Smith | | csmith@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |
| Melissa Sanchez | | Melissa.Sanchez@arnoldporter.com | 5/28/2025 12:37:00 PM | SENT |
| Edockets Calendaring | | eDocketsCalendaring@arnoldporter.com | 5/28/2025 12:37:00 PM | SENT |
| Andrew Bergman | | andrew.bergman@arnoldporter.com | 5/28/2025 12:37:00 PM | SENT |
| Elizabeth FEoff | | leoff@porterhedges.com | 5/28/2025 12:37:00 PM | SENT |
| Katherine G.Treistman | | Katherine.Treistman@arnoldporter.com | 5/28/2025 12:37:00 PM | SENT |
| Luke A.Schamel | | lschamel@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |
| Christopher Hilton | | chris@stonehilton.com | 5/28/2025 12:37:00 PM | SENT |
| Judd Stone | | Judd@stonehilton.com | 5/28/2025 12:37:00 PM | SENT |
| Alyssa Smith | | asmith@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |
| Bonnie Chester | | bonnie@stonehilton.com | 5/28/2025 12:37:00 PM | SENT |
| Jonna NSummers | | jsummers@porterhedges.com | 5/28/2025 12:37:00 PM | SENT |
| Lakshmi NKumar | | lkumar@porterhedges.com | 5/28/2025 12:37:00 PM | SENT |
| R. PaulYetter | | pyetter@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |
| Susanna R.Allen | | sallen@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |
| Justin Bernstein | | bernsteinju@gtlaw.com | 5/28/2025 12:37:00 PM | SENT |
| Business Court Division 3A | | bcdivision3a@txcourts.gov | 5/28/2025 12:37:00 PM | SENT |
| Dolores Brunelle | | dbrunelle@porterhedges.com | 5/28/2025 12:37:00 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 101329629
Filing Code Description: No Fee Documents
Filing Description: Discovery Order
Status as of 5/28/2025 12:43 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Dolores Brunelle | | dbrunelle@porterhedges.com | 5/28/2025 12:37:00 PM | SENT |
| Cathy Hodges | | catherine.hodges@aporter.com | 5/28/2025 12:37:00 PM | SENT |
| Mikaila Skaroff | | mikaila.skaroff@arnoldporter.com | 5/28/2025 12:37:00 PM | SENT |
| Rosalinda Luna | | rosie@stonehilton.com | 5/28/2025 12:37:00 PM | SENT |
| Adam Locke | | adam@lockelaw.com | 5/28/2025 12:37:00 PM | SENT |
| Alexander Dvorscak | | alex@stonehilton.com | 5/28/2025 12:37:00 PM | SENT |
| Shannon Smith | | ssmith@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |
| Dale Wainwright | | dale.wainwright@gtlaw.com | 5/28/2025 12:37:00 PM | SENT |
| Julia C.Risley | | jrisley@yettercoleman.com | 5/28/2025 12:37:00 PM | SENT |

# Appendix B



## The Business Court of Texas, Third Division

| | | |
|---|---|---|
| SAFELEASE INSURANCE SERVICES LLC, | § § § § | |
| *Plaintiff,* | § | |
| v. | § | Cause No. 25-BC03A-0001 |
| STORABLE, INC., et al., | § § | |
| *Defendants.* | § § | |

## Order on Motions for Reconsideration; Other Relief

Before the Court are Storable's Motion for Reconsideration of the Court's April 15, 2025 Order Denying Modification of the Protective Order and Storable's Motion for Partial Reconsideration of the Court's May 28, 2025 Discovery Order (collectively, the Motions). The Court **DENIES** both Motions but elects to provide Storable with other relief detailed below. The Court therefore **ORDERS** as follows:

1. The customer information requested in SafeLease's Request for Production (RFP) No. 10 qualifies for OCEO protection under the Agreed Protective Order in this case.

2.     For purposes of Storable's production in response to RFP No. 10 only, Mr. Locke will be excluded from the attorneys of record permitted to view OCEO material under the Agreed Protective Order.[1]

3.     For all other OCEO material, Mr. Locke may continue to have access as an attorney of record in this case.

4.     Consistent with the offer in his March 26, 2025 letter, Mr. Locke must refrain from participating in any future business negotiations between SafeLease and Storable that are outside the context of legal disputes or potential settlements of legal disputes, unless all parties agree otherwise.

Date signed: June 23, 2025.

_____
Hon. Melissa Andrews
Judge of the Texas Business Court,
Third Division

---

[1] This precaution in no way reflects on the integrity or professionalism of Mr. Locke, which the Court does not question.

2

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 102291622
Filing Code Description: No Fee Documents
Filing Description: Order on Motions to Reconsider
Status as of 6/23/2025 10:54 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ray TTorgerson | | rtorgerson@porterhedges.com | 6/23/2025 10:47:25 AM | SENT |
| Delonda Dean | | ddean@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |
| Yetter Coleman | | efile@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |
| Carolyn Reed | | creed@porterhedges.com | 6/23/2025 10:47:25 AM | SENT |
| Courtney Smith | | csmith@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |
| Melissa Sanchez | | Melissa.Sanchez@arnoldporter.com | 6/23/2025 10:47:25 AM | SENT |
| Edockets Calendaring | | eDocketsCalendaring@arnoldporter.com | 6/23/2025 10:47:25 AM | SENT |
| Andrew Bergman | | andrew.bergman@arnoldporter.com | 6/23/2025 10:47:25 AM | SENT |
| Elizabeth FEoff | | leoff@porterhedges.com | 6/23/2025 10:47:25 AM | SENT |
| Katherine G.Treistman | | Katherine.Treistman@arnoldporter.com | 6/23/2025 10:47:25 AM | SENT |
| Luke A.Schamel | | lschamel@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |
| Christopher Hilton | | chris@stonehilton.com | 6/23/2025 10:47:25 AM | SENT |
| Judd Stone | | Judd@stonehilton.com | 6/23/2025 10:47:25 AM | SENT |
| Alyssa Smith | | asmith@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |
| Bonnie Chester | | bonnie@stonehilton.com | 6/23/2025 10:47:25 AM | SENT |
| Jonna NSummers | | jsummers@porterhedges.com | 6/23/2025 10:47:25 AM | SENT |
| Lakshmi NKumar | | lkumar@porterhedges.com | 6/23/2025 10:47:25 AM | SENT |
| R. PaulYetter | | pyetter@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |
| Susanna R.Allen | | sallen@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |
| Justin Bernstein | | bernsteinju@gtlaw.com | 6/23/2025 10:47:25 AM | SENT |
| Business Court Division 3A | | bcdivision3a@txcourts.gov | 6/23/2025 10:47:25 AM | SENT |
| Dolores Brunelle | | dbrunelle@porterhedges.com | 6/23/2025 10:47:25 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 102291622
Filing Code Description: No Fee Documents
Filing Description: Order on Motions to Reconsider
Status as of 6/23/2025 10:54 AM CST

Case Contacts

| Dolores Brunelle | | dbrunelle@porterhedges.com | 6/23/2025 10:47:25 AM | SENT |
|---|---|---|---|---|
| Cathy Hodges | | catherine.hodges@aporter.com | 6/23/2025 10:47:25 AM | SENT |
| Mikaila Skaroff | | mikaila.skaroff@arnoldporter.com | 6/23/2025 10:47:25 AM | SENT |
| Rosalinda Luna | | rosie@stonehilton.com | 6/23/2025 10:47:25 AM | SENT |
| Adam Locke | | adam@lockelaw.com | 6/23/2025 10:47:25 AM | SENT |
| John Holler | | john.holler@arnoldporter.com | 6/23/2025 10:47:25 AM | SENT |
| Alexander Dvorscak | | alex@stonehilton.com | 6/23/2025 10:47:25 AM | SENT |
| Shannon Smith | | ssmith@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |
| Dale Wainwright | | dale.wainwright@gtlaw.com | 6/23/2025 10:47:25 AM | SENT |
| Julia C.Risley | | jrisley@yettercoleman.com | 6/23/2025 10:47:25 AM | SENT |